## Case No. 12,422.

### SAYLES v. NORTHWESTERN INS. CO.

[2 Curt. 610.] [1]

Circuit Court, D. Rhode Island. June Term, 1856.

INSURANCE — FIRE — WARRANTIES BY INSURED — HOW CONSTRUED—FORCE PUMP.

1. By a warranty in a policy of fire insurance, the insured is held only to a bare and literal compliance with the exact meaning of his engagement; which is not to be extended by construction, to include any thing not necessarily implied in its terms.
[Cited in Wright v. Sun Mut. Ins. Co., Case No. 18.095.]
[Cited in brief in Delaware & C. S. Towboat Co. v. Starrs. 69 Pa. St. 40. Cited in Howard Fire & Marine Ins. Co. v. Cornick. 24 Ill. 462. Cited in brief in Kibbe v. Hamilton Ins. Co., 11 Gray, 166. Cited in Mickey v. Burlington Ins. Co., 35 Iowa, 178; Thomas v. Fame Ins. Co., 108 Ill. 103.]

2. The warranty of a force-pump in a mill, at all times ready for use, does include a warranty of power to work the pump; but not any particular kind of power.
[Cited in brief in Campbell v. New England Mut. Life Ins. Co., 98 Mass. 387. Cited in Poor v. Humboldt Ins. Co., 125 Mass. 277.]

3. A warranty that the force-pump shall be at all times ready for use, does not engage that a fire, being the peril insured against, shall not disable it; and whether it does so at one stage of the fire, or another, the warranty is not broken.
[Cited in Cady v. Imperial Ins. Co., Case No. 2,283.]

4. Where a policy provides that any representation of the assured made in the survey, shall be deemed a warranty, the court will construe the instrument strictly against the insurer.

[This was an action at law by William F. Sayles against the Northwestern Insurance Company. For a hearing on a motion to dismiss for want of jurisdiction, see Case No. 12,421.]

Mr. Jenckes, for plaintiff.
Mr. Bradley, contra.

CURTIS, Circuit Justice. This is an action on a policy of insurance against fire. The policy bears date on the 1st day of May, 1854, and insured the plaintiff in the sum of $2,500, against loss by fire on his bleachery and the movable machinery therein, situate in the town of Smithfield, in the state of Rhode Island. The defence set up, is the breach of two warranties. The policy declares that it "is made and accepted in reference to the proposals and conditions hereto annexed, which are to be used and resorted to, in order to explain the rights and obligations of the parties hereto, in all cases not herein otherwise specially provided for; and a failure to observe or comply with any of the said proposals or conditions, or any violation thereof, shall render this policy void and of no effect." The twelfth condition annexed to the policy is as follows: "Whenever a policy is made and issued upon a survey, description, or representation of certain property, such survey, description, or representation, shall be taken and deemed to be a part and portion of such policy and a warranty on the part of the insured, as fully as if the same were therein written or referred to."

A survey is produced, bearing the same date as the policy, and it is agreed the policy was made and issued with reference thereto. In this survey are found the following questions and answers: "Is there a good forcing-pump in the factory, designed expressly for protection against fires, and at all times in condition for use?" Answer: "There is." "If so, in what part of the building is it, and is it so geared that it can be put in operation outside the mill? How much water will it throw per minute?" Answer: "It is in the basement story, and is geared so it can be put in operation outside of building."

[1] [Reported by Hon. B. R. Curtis, Circuit Justice.]

I am of opinion that these statements by the assured concerning the force-pump, must be deemed warranties, entitled to the same effect as if they had been inserted in the policy, in the form of warranties. Indeed this has not been questioned at the bar. The argument has turned wholly upon the meaning and effect of these statements, considered as warranties, and upon the inquiry whether they had been substantially complied with.

The material facts, as to which there is no dispute are, that this bleachery was upon a stream of water, which did not afford permanent power sufficient to operate it; and consequently a steam-engine was used to drive the machinery, including the force-pump, when the water power was not adequate. On the night between the last day of April and the first day of May, the dam which raised the head of water was carried away by a flood; so that when the survey was dated, the force-pump could not be driven by water power. But, at that date, and down to the time of the fire, the steam power was sufficient to operate it. The fire took in the boiler-house, and rendered it impossible to work the force-pump by steam; and as it could not be worked by water power, it was not capable of use after the fire was discovered.

The defendants take two grounds; the first is, that inasmuch as the survey, and the diagram which accompanied it, show that there was a dam and a water-wheel connected with the works, the warranty must be construed to impose on the assured the duty of having the water power always in existence, and ready to operate on the force-pump; that the warranty is, in terms, that the pump is at all times in condition for use; and that taken in reference to the nature of the works as shown by the diagram and survey, this means, at all times in condition for use by means of water power.

But it must be remembered that we are here dealing with a warranty; which is a stipulation, on the literal truth or fulfilment of which the validity of the entire contract depends. And, that, as the insurer has the right to exact of the insured a literal performance, and cannot be compelled to accept a substantial compliance, or to show that the breach was any way material to his interest, so, on the other hand, the insured is held only to a bare and literal compliance with his engagement; which is not to be extended by construction to include what is not necessarily implied in its terms. Livingston v. Maryland Ins. Co., 6 Cranch [10 U. S.] 274; Hide v. Bruce, 3 Doug. 213; per Kent, J., in Kemble v. Rhinelander, 3 Johns. Cas. 134; 1 Arn. Ins. 588.

I think it is a fair inference, that a warranty of the existence of a forcing pump on these premises, at all times ready for use, extends to the fact that there is sufficient power to work the pump; though it must be admitted this comes very near to the case decided by Lord Mansfield and his associates in 3 Doug. That was a warranty that a ship "should have twenty guns." The guns were on board, but there were not men enough to work them; and it was held the warranty had been complied with, there being no pretence of fraud.

If the warranty were of a forcing pump in a dwelling-house, at all times ready for use, I should hold it satisfied by the existence of such a pump, in a condition to be worked; but one of the inquiries put here was, whether the pump was so geared that it could be put in operation outside the building. Considering the nature of the works and the uniform and notorious usage to have such a pump in such a position, driven by power, and the inquiry as to the gearing, it seems to me a necessary result that this warranty extended to the pump being so geared that it could be attached to and worked by some suitable power, such as is applied to drive such an engine. But I cannot find any stipulation that the power was of any particular kind, or derived from any particular source. It may be true that the insurers had reason to think the power employed would be a water-wheel. If they did so think, and deemed it material, they should have introduced it into the warranty, if they thought it proper to protect themselves by having it in that form. Not having done so, I cannot inquire what they expected. If any misrepresentation or concealment affected their interest, that must be tried by the jury. But it can have no bearing upon the construction of the written warranty, which is the only subject now under consideration.

The second ground taken by the defendants is, that this was a continuing warranty that the pump should at all times be ready for use; and that it was not capable of being used at the time of this fire. It is true, that during the progress of the fire, the pump became disabled. But surely, the statement that there is a pump on the premises at all times, in a condition for use, cannot be construed to mean that it shall continue in a condition for use after fire breaks out on the premises. This would render the policy little better than a nullity; for at some period during the progress of a fire, by which the premises are destroyed, a force pump thereon must cease to be in a condition for use. Thus construed, the policy would only insure against so much loss or damage by fire as should not prevent the working of the force pump; that being disabled, the policy would be void. I cannot give such a construction to this instrument. And whether the fire broke out near the pump, or its gearing, so as to disable it almost instantly, or more remotely, so as to allow it to be operated for a time, cannot affect the question whether the warranty was kept. I think the true construction of the warranty cannot be pressed further than this,—that the force pump shall be in a

condition for use at all times when not rendered useless by fire. I say not further than this, because I have some doubt whether this warranty, considered strictly as a warranty, does extend to the future; whether its true construction does not confine it to the then existing state of things; leaving the rights of the underwriters to depend on another clause of the policy, which guards them against changes of the risk from fault of the assured. But I have not thought it needful to pursue that inquiry, being satisfied that if it be a continuing warranty, it was not broken.

I am aware that the breach of a warranty is not excused even by the direct and irresistible operation of a peril insured against. Thus, a warranty to sail by a given day is not excused by an embargo, though such restraint was one of the perils insured against. Hore v. Whitmore, Cowp. 784. But the question in this case is, not whether a breach of a warranty to have the force pump in a condition for use is excused by the occurrence of a fire, but whether the insured did warrant it should not be disabled by fire. Being of opinion he did not, I think this ground of defence is not tenable.

It is further contended by the defendants, that there was a breach of a warranty respecting the material of which part of one of the buildings was composed. A diagram, made on a separate sheet of paper, is twice referred to in the survey. These references are as follows: Question. "Of what material is the building constituted, and with what is the roof covered?" Answer. "Wood and stone; roof covered with shingles." Question. "When built, size, number of stories, how high between joints, and how finished within?" Answer. "About the year 1834 or 1835; that is the main building; other buildings recently. (See diagram.)" Question. "Description and distance of adjacent buildings, of what construction, dimensions, and how occupied?" Answer. "See diagram." At the foot of the diagram is written, "The above is a ground survey of the Moshassuck Bleachery, showing that the buildings are all connected together. The basements of the main buildings, namely, No. 1, 2, and 3, are built of stone. The other buildings have no basements." The ground plan of No. 5 shows 46 by 17½ feet. Upon it is written, "Boiler house, stone and brick, roof wood." In point of fact, the boiler house proper was of stone and brick; but at the end thereof was a shelter in front of the boiler, about twelve feet long, one side of which was wood. The end, also, so far as it was inclosed, was of wood. It is insisted that this amounts to a breach of warranty.

Under the terms of this policy, already quoted, the insured warrants the truth of the survey. But the diagram is not in fact part of the survey, and cannot be deemed to be incorporated therein in legal effect, except in those particulars, and for those purposes, in regard to which it is referred to by the survey. And the survey nowhere refers to the diagram, as showing the materials of which the buildings insured are constructed. The references are confined to the size of the buildings insured, and whatsoever is shown as to any buildings adjacent to the premises insured. This interpretation of the extent of the warranty of what is shown on the diagram, is not only consistent with the language of the papers, but is demanded by good faith. If the insured were taken to warrant the literal truth of every particular on a complicated diagram, though wholly immaterial to any interest of the insured, the policy would be little better than a snare. Indeed, the clause of the policy which makes every statement in the survey a warranty, does in my judgment go further than sound policy and the fair protection of the substantial rights of insurers can justify. It is well known how incautious parties are respecting these printed stipulations; and I feel no disposition to extend the effect of such an one as this. If any thing contained on the diagram amounts to a material misrepresentation, it is a defence; but this involves matter of fact, to be inquired of by the jury.

The defendants can go to the jury on this question, if they shall so elect; otherwise, I shall direct a verdict for the plaintiff.