DAVID J. THOMAS

*v.*

THE FAME INSURANCE COMPANY.

*Filed at Ottawa November 20, 1883.*

1. PRACTICE—*when Appellate Court reverses, but fails to find facts—presumption.*   Where the Appellate Court reverses the judgment of a circuit court, but fails to recite in its final order the facts as found by it, it will be presumed that the Appellate Court found the facts the same way as did the trial court, and reversed for some error of law in the proceedings; and in such case, if the record of the trial court fails to show any error as to the law, the judgment of the Appellate Court must be reversed.

2. AMENDMENT—*change of parties is not a change of the action.*   It was evidently the intention of the legislature in adopting the provision in section 24 of the Practice act, that no amendment after the commencement of the suit and before final judgment, resulting merely in a change or substitution of parties to the action, or in a change of the form of the action, should be deemed a change of the action itself.   The identity of the cause of the action, in such case, is still preserved.

3. SAME—*right of defendant to plead limitation after amendment.*  Where, after the time limited by contract for bringing an action on a policy of insurance, an amendment is allowed, not changing the original cause of action or ground on which a recovery is sought, but merely changing the parties plaintiff by substituting another person as plaintiff, a plea setting up the limitation presents no defence, the suit having originally been commenced within the time limited.

4. But where some new cause of action has been introduced into a suit by amendment, against which the Statute of Limitations had run before making such amendment, the defendant will be entitled to present the bar of the statute as to such new claim or cause of action.

5. INSURANCE—*breach of warranty a defence, without showing an increase of risk.* Where an application for insurance provided that the answers to the questions therein propounded should form a part of the contract of insurance, and a warranty on the part of the applicant, and the policy provided that for any misrepresentation or concealment touching the risk it should be void, the company may avail itself of the applicant's breach of warranty in the description of the property insured, and the survey thereof, without showing, or its otherwise appearing, that the risk was thereby materially affected. If the description was false, it is unimportant whether this was material to the risk or not.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. SIDNEY SMITH, Judge, presiding.

Mr. PHILIP STEIN, for the appellant:

The plea of limitation presented no defence. The amendment introduced no new cause of action. It was immaterial to whom the appellee might pay, if liable on the policy.

A warranty in the law of insurance is never created by construction. It must appear in express terms, affirmatory or promissory, or must necessarily result from the nature of the contract. *Jefferson Ins. Co.* v. *Cotheal,* 7 Wend. 80; *Mutual Benefit Life Ins. Co.* v. *Robertson,* 59 Ill. 123.

Warranties are construed strictly against those for whose benefit they are made, and so, if possible, as to avoid a forfeiture. *Hyde* v. *Bruce,* 3 Doug. 213; *World Mutual Life Ins. Co.* v. *Schultze,* 73 Ill. 586; *Saylor* v. *Insurance Co.* 2 Curtis' C. C. 613; *Blood* v. *Howard Fire Ins. Co.* 12 Cush. 472; *Catlin* v. *Springfield Fire Ins. Co.* 1 Sum. 434; *Ripley* v. *Ætna Ins. Co.* 29 Barb. 552; May on Insurance, secs. 162, 171; Flanders on Fire Insurance, (2d ed.) 292; Wood on Fire Insurance, sec. 167; *Morse* v. *Insurance Co.* 30 Wis. 540; *Carter* v. *Humboldt Fire Ins. Co.* 17 Iowa, 456.

The fact that the application was submitted as a warranty does not make it one, unless the policy adopts the application, by apt and proper language, as a part of the contract, and not always even then. *Boardman* v. *N. H. Mutual Ins. Co.* 20 N. H. 551; *Owens* v. *Holland Purchase Ins. Co.* 56 N. Y. 565; *Hartford Protection Ins. Co.* v. *Harmer*, 2 Ohio St. 461; *American Popular Life Ins. Co.* v. *Day*, 39 N. J. 89; *Howard Fire and Marine Ins. Co.* v. *Cornick*, 24 Ill. 455; *Trench* v. *Chenango Ins. Co.* 7 Hill, 122; *Farmers' Ins. Co.* v. *Snyder*, 16 Wend. 481; Wood on Fire Insurance, secs. 138, 144; May on Insurance, sec. 159, *et seq.*

Although a policy refers to and makes the application a part of it, yet only statements made strictly in answer to the inquiries contained therein can be regarded as warranties. Flanders on Fire Insurance, (2d ed.) 236, 237; Wood on Fire Insurance, secs. 144, 160; *Howard Fire and Marine Ins. Co.* v. *Cornick*, 24 Ill. 455; *Hartford Protection Ins. Co.* v. *Harmer*, 2 Ohio St. 461.

The description of the risk in the policy is not a warranty. It simply names and identifies the premises. *Gerhauser* v. *North British Ins. Co.* 7 Nev. 185; *Schultz* v. *Merchants' Ins. Co.* 57 Mo. 331; *Browning* v. *Home Ins. Co.* 71 N. Y. 508; *Maher* v. *Hibernian Ins. Co.* 6 Hun, 353; *Billings* v. *Tolland Ins. Co.* 20 Conn. 139.

Messrs. Grant, Swift & Brady, for the appellee:

By the amendment a different plaintiff sued, but his suit was not brought within one year, and no recovery could be had by the present plaintiff. *Dunphy* v. *Riddle*, 86 Ill. 22; *Crowl* v. *Nagle*, id. 437; *McGraw et al.* v. *Bayard et al.* 96 id. 154; *Miller* v. *McIntyre*, 6 Pet. 61; *Illinois Central R. R. Co.* v. *Cobb*, 64 Ill. 140; *King* v. *Avery*, 37 Ala. (N. S.) 173; *Woodward* v. *Ware*, 37 Me. 564.

There was a breach of warranty by the plaintiff, which renders the policy null and void. The answers did not dis-

close the fact that shingles were made upon the premises, and the diagram was incorrect, and failed to show that part of the building where the shingles were made, etc. These omissions were fatal to the right of recovery, whether accidental or intentional. *De Hahn* v. *Hartley*, 1 Term Rep. 343; *Fowler* v. *Ætna Fire Ins. Co.* 6 Cow. *673; *Ripley* v. *Ætna Fire Ins. Co.* 30 N. Y. 136; *Burritt* v. *Saratoga County Mutual Fire Ins. Co.* 5 Hill, 188; *Ætna Ins. Co.* v. *Grube*, 6 Minn. 82; *Blumer et al.* v. *Phœnix Ins. Co.* 45 Wis. 622; *Dewees* v. *Manhattan Ins. Co.* 34 N. J. 244; *Forbush* v. *Massachusetts Ins. Co.* 4 Gray, 337.

Where the application is referred to as forming a part of the contract, the statements therein are held to have the force and effect of warranties. May on Insurance, (2d ed.) sec. 159.

Where parties by express agreement make certain matters inquired into material, it will not be open to question whether or not they were actually so. *Williams* v. *N. E. Mutual Fire Ins. Co.* 31 Me. 219; *Ripley* v. *Ætna Ins. Co.* 30 N. Y. 136; *Gahagan* v. *Union Mutual Ins. Co.* 43 N. H. 176; *Commonwealth Ins. Co.* v. *Monninger*, 18 Ind. 352; *Abbott* v. *Shawmut Ins. Co.* 3 Allen, 213; *Wilson* v. *Conway Fire Ins. Co.* 4 R. I. 141; *Dewees* v. *Manhattan Ins. Co.* 34 N. J. 247.

Where the application is prepared, signed and presented by the owner, the company have a right to rely upon its correctness, and if it is incorrect in any material part, it avoids the policy. *Atlantic Ins. Co.* v. *Wright*, 22 Ill. 474; *Andes Ins. Co.* v. *Fish*, 71 id. 622; *Lycoming Ins. Co.* v. *Rubin*, 79 id. 403; *Burritt* v. *Saratoga County Mutual Fire Ins. Co.* 5 Hill, 188; *Marshall* v. *Insurance Co.* 7 Foster, 157; *Cumberland Valley Mutual Protection Co.* v. *Schell*, 5 Casey, 31; *Carpenter* v. *American Ins. Co.* 1 Story, 57; *Gould* v. *York County Mutual Fire Ins. Co.* 47 Me. 409.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

Some time in the month of June, 1875, one T. M. Taylor, a general insurance agent and broker, having an office at Minosha, Wisconsin, called upon David J. Thomas, the appellant, at his place of business in the town of Colby, same State, for the purpose of procuring Thomas' insurance on his factory at that place, Taylor representing at the time that he was the agent of the Fame Insurance Company, the appellee, and other companies, naming them. The interview resulted in appellant giving to Taylor an application for $2000 insurance on the property, to be taken in such of the companies represented by him as he might select. The factory in question was used for the manufacture of clothes-pins, broom-handles and shingles, though there was nothing in the name of the establishment to indicate that shingles were made in it, it being simply called "Clothes-pin and Broom-handle Factory." It appears, though, Taylor was well acquainted with the factory, and knew that one department of it was used for the manufacture of shingles. The application was made out by Taylor on one of the printed forms of the Planters' Insurance Company, and was addressed to the Mercantile Insurance Company of Chicago, and the answers to some of the interrogatories were written down by him from his own knowledge of the business and premises, while the others were given by Thomas himself. The questions in the printed blank, which were answered partly by Taylor and partly by Thomas, as just stated, had the following caption: "The applicant will answer particularly the following questions, and sign the same as descriptive of the premises, and forming a part of the contract of insurance, and a warranty on his part." The questions and answers following this caption, so far as deemed material to the controversy, are as follows:

"I.    Name of property.

"A.    Clothes-pin and broom-handle factory.

"Building.    How long and how wide is it?

"A.    54x40, two-story; engine-room, 24x36.

"Boiler-house.    Where is it located?

"A.    West side of building.

"[Show on diagram.]

"*What is the precise kind of goods made, and of what material?*

"A.    *Clothes-pins and broom-handles.*"

Whether the application was either read to or by the appellant previous to his signing or to the issuing of the policy, is a fact not clearly settled by the evidence. While on its face the application contemplates, and in express terms requires, a diagram to be made out as a part of the same, showing the size, form, etc., of the building, and its relation to the surrounding property within a hundred and fifty feet distance, yet no such diagram was made out previous to appellant's signing the application, nor did he ever see one till after the policy was issued, though one was prepared and annexed to the application as a part of it, presumably by Taylor, before it was submitted to the company. The diagram, as made out and presented to the company, fails to truly represent the character, shape or extent of the factory, particularly that part of it which is used for the manufacture of shingles.

The application, with the diagram annexed, being thus prepared, was forwarded to one Eastman, an insurance broker of Chicago, with directions to obtain the required insurance. Eastman submitted the application to Southwick & Berne, who were, respectively, the general insurance agents of appellee and the Empire Fire Insurance Company. Upon a conference between these agents the risk was agreed to be taken and equally divided between the two companies, and policies were issued accordingly. The one issued by appellee (being the same now in suit) was, at the time of its execution, to-wit,

on the 26th of June, 1875, delivered by Southwick to East-
man, the former paying to him at the time the customary
brokerage fee.   Eastman forwarded the policy to Taylor, who
subsequently delivered it to the assured.   In August follow-
ing, appellant paid the premium ($50) to Taylor, who for-
warded it to Eastman, and the latter paid it to the company.
On the 26th of May, 1876, the insured premises were totally
destroyed by fire, and the loss was regularly adjusted by the
two companies, through Berne, the general agent of the Em-
pire Fire Insurance Company.   By the terms of the policy
the loss, if any, was made payable to the Mann Brothers, of
Milwaukee, as their interest might appear.   The appellee
having declined to pay the loss, this suit was originally com-
menced on the 26th of September, 1876, in the name of
appellant, for the use of Joseph and Henry Mann, but appel-
lant's name as plaintiff was subsequently, on the 18th of
November following, by permission of the court, stricken out,
and the names of the Manns substituted as plaintiffs, and
thereafter the suit was prosecuted in their names until the
4th of February, 1881, when, by leave of the court, the name
of appellant was restored as plaintiff in the cause, and the
records and files in the case were changed accordingly, since
which time the cause has proceeded in the name of appellant,
for the use of Joseph and Henry Mann, as originally com-
menced.

There have been two trials of this case in the Superior
Court of Cook county, where the action was commenced, in
each of which the plaintiff recovered a judgment for the face
of the policy, with legal interest.   Both judgments, on appeal
to the Appellate Court, were reversed for alleged errors in
law, and the cause was remanded for further proceedings in
conformity with the views of that court, as expressed in the
several opinions filed therein.   It appears, however, after
the last appeal had been thus disposed of, by a stipulation
between the parties it was agreed the remanding order should

be stricken out, so that the case might be brought directly
to this court for consideration, which was accordingly done,
and the case is now here on appeal.

It is claimed by appellant this case is governed by the *Peck
case*, 98 Ill. 139, and should therefore be reversed, for the
reasons stated in that case. This is a misapprehension.
That case holds that where there is a reversal of the judg-
ment of the trial court by the Appellate Court, and the latter
court fails to recite the facts as found by it in its final order
on appeal to this court, we must assume, by reason of such
non-recital of facts, the Appellate Court found the facts the
same way as the trial court, and that consequently its reversal
of the judgment of the trial court must have been for some
supposed error of law, and if, upon an examination of the
record of the trial court, there is in the judgment of this
court no such error of law warranting the reversal, as we
found in the *Peck case*, the judgment of the Appellate Court
will be necessarily erroneous, on the ground it reversed for a
supposed error of law which had no real existence. So in
this case, we must assume, by reason of the non-recital of
the facts in the final order of the Appellate Court, that court
found the facts the same way as found by the trial court, and
must therefore have reversed for some supposed error of law
in the proceedings of the trial court. If, upon an examina-
tion of the record by us, we should, as in the *Peck case,* find
no error of law, we should, under the authority of that case,
reverse the judgment in this case. It remains, therefore, to
inquire whether any of the errors relied on for a reversal in
the Appellate Court are well founded or not.

In the view we have taken of the case it will not be neces-
sary to consider all the questions raised by the assignment
of errors in the Appellate and this court. It is sufficient for
present purposes to determine whether, upon any of the errors
assigned in that court, the judgment of the trial court was
properly reversed.

The policy in this case, like most of policies, contains a clause requiring the action, in case of a loss, to be brought within twelve months after its occurrence. Upon the substitution of Thomas as plaintiff for the Manns, after the first trial in the Superior Court, the company, proceeding upon the theory this change in the parties was in legal effect a discontinuance of the original suit, by leave of the court filed a special plea setting up the limitation in the policy in bar of the action, the substitution as to parties having been made more than one year after the loss. Whether the above facts relied on in support of the plea constituted a defence to the action, presents a question which occupies a prominent position in appellee's brief, and the ruling of the trial court upon it was one of the main errors relied on by the company for a reversal in the Appellate Court, and it is equally relied on here as sustaining the reversal there. We do not think the facts shown in support of the plea sustain it,—or, in other words, we do not think the limitation contained in the policy, under the facts as shown by the record, affords any defence to the action. The 24th section of the Practice act provides: "At any time before final judgment in a civil suit amendments may be allowed on such terms as are just and reasonable, *introducing any party necessary to be joined as plaintiff or defendant,* changing the form of action, and in any manner, either of form or substance, in any process, pleading or proceeding, which may enable the plaintiff to sustain the action *for the claim for which it was intended to be brought,* or the defendant to make a legal defence. The adjudication of the court allowing an amendment shall be conclusive evidence of the identity of the action." In furtherance of the intention of the legislature a very broad and liberal construction has been given to this section. It was evidently the intention of the legislature in adopting this provision, that no amendment after the commencement of the suit and before final judgment, resulting in a change or substitution of par-

ties to the action or in a change of the form of the action, should be deemed a change of the action itself. (*Sidway* v. *Marshall*, 83 Ill. 438; *Teutonia Life Ins. Co.* v. *Mueller*, 77 id. 22; *Dickson* v. *Chicago, Burlington and Quincy R. R. Co.* 81 id. 215; *Challenor* v. *Niles*, 78 id. 78.) The only limitation upon the right thus conferred is, that amendments are to be allowed "on such terms as are just and reasonable," and "to enable the plaintiff to sustain the action for the claim for which it was intended to be brought, or the defendant to make a legal defence."

There is no just ground for the claim that by reason of the amendment making new parties plaintiff there resulted any change in the cause of action. The object of the suit after the amendment was precisely the same as it was before, namely, to recover the amount of the policy on account of the destruction by fire of the insured premises, and so far as we can see, assuming there was a right of recovery at all, it was and is a matter of total indifference to the company whether the recovery is in the names of the Manns or in the name of Thomas for their use. Had some new claim or cause of action been introduced into the suit by the amendment, against which the Statute of Limitations had run, or before the making of such amendment, the position of appellee would be clearly right; but such is not the case. By the express terms of the statute the allowance of the amendment is made conclusive of the identity of the action. If, then, both the action and cause of action, before and after the amendment, were precisely the same, as they certainly were, then the limitation of one year in the policy clearly presented no defence to the action, as it is conceded the original action was commenced within the year.

As already appears from the caption of the application, appellant was required to answer, specifically, certain questions, "and sign the same as descriptive of the premises, and forming a part of the contract of insurance, *and a warranty*

*on his part.*"    In addition to this the policy itself contained, among others, the following provisions:

"Applications for insurance on property must be in writing, and must specify the construction and materials of the building to be insured,   *   *   *   by whom occupied, whether as a private dwelling, or how otherwise, its situation with respect to contiguous buildings, and their construction and materials, and whether any manufacturing is carried on within or about it;   *   *   *   and such survey and description shall be taken and deemed to be a part and portion of the policy issued thereon, and a warranty on the part of the insured.

"If any person effecting insurance in this company shall make any misrepresentation or concealment touching the risk to be assumed,   *   *   *   this policy shall be void."

In view of these provisions in the application and policy, and the additional fact that appellant, in answer to the question in the application, "What is the precise kind of goods made, and what material?" failed to make known that one part of the building was used for the manufacture of shingles, the trial court was asked by the company to give to the jury the following instruction:

"If the jury believe, from the evidence, that there was a shingle mill connected with the premises insured, and that this fact was not disclosed by the application upon which the policy in suit issued, and was not known to the defendant at the time the policy was issued, or at any time before the fire, then the plaintiff can not recover."

—Which the court refused to do, but gave as a substitute for it the following modified instruction:

"If the jury believe, from the evidence, that there was a shingle mill connected with the premises insured *at the time the application was signed by plaintiff*, and that this fact was not disclosed by the application upon which the policy in suit issued, and was not known to the defendant *or its agents*

at the time the policy was issued, or at any time before the fire, *and that the existence and use of said shingle mill materially affected the risk under said policy, and if the jury further believe, from the testimony in this cause, that the plaintiff,* Thomas, or his agent, intentionally suppressed from his written application the fact of the existence and use of said shingle mill, knowing it to be material to said risk, then the plaintiff can not recover."

—To the giving of which, as modified, the company at the time excepted. The additions and modifications made by the court to the instruction as asked, are for convenience put in italics.

The instruction as modified we regard as clearly erroneous. It ignores altogether the fact that the answers of the assured to the specific interrogatories contained in the application are therein declared to be made and signed "as descriptive of the premises, and forming a part of the contract of insurance, and a *warranty*" on the part of the assured. It also leaves out of the question altogether the diagram or survey accompanying the application, which, as we have already seen, fails to truly represent the insured premises, especially the part of them used for the manufacture of shingles, although the policy in express terms declares "such survey and description shall be taken and deemed to be a part and portion of the policy issued thereon, *and a warranty on the part of the assured*." The survey and description of the property being thus made an express warranty by the assured, if false it was wholly unimportant whether they were material to the risk. Nevertheless, the jury were told by this instruction, before the company could avail itself of the defence afforded by the plaintiff's breach of the warranty it was incumbent on the company to show, or for it to otherwise appear from the evidence, the risk was thereby materially affected. This view is certainly opposed to the general current of authority on the subject, and it can not, therefore, receive our sanction.

*Columbia Ins. Co.* v. *Cooper,* 50 Pa. St. 331; *Denny* v. *Conway Ins. Co.* 13 Gray, 492; *Jefferson Ins. Co.* v. *Cotheal,* 7 Wend. 72; *Wall* v. *Howard Ins. Co.* 14 Barb. 383; *Sheldon* v. *Hartford Ins. Co.* 22 Conn. 235; *Commonwealth Ins. Co.* v. *Monninger,* 18 Ind. 352; *Barteau* v. *Phœnix Ins. Co.* 67 N. Y. 595; *Newcastle Ins. Co.* v. *McMorran,* 3 Dowl. P. C. 225; *Styles* v. *Northwestern Ins. Co.* 2 Curt. 610; *Wetherell* v. *Maine Ins. Co.* 49 Maine, 200; *Anderson* v. *Fitzgerald,* 4 H. L. Cases, 484; *Andes Ins. Co.* v. *Fish,* 71 Ill. 620.

The giving of this instruction being a material error upon a vital point in the case, fully warranted the Appellate Court in reversing the judgment of the trial court as it did.

*Judgment affirmed.*

Mr. JUSTICE SCOTT, dissenting:

Originally this suit was brought by David J. Thomas, for the use of Joseph and Henry Mann, on a policy of insurance issued by the Fame Insurance Company, but subsequently, on leave given by the court for that purpose, Joseph and Henry Mann were substituted as plaintiffs, and from that time until the 4th day of February, 1881, the suit progressed in their names. On the day last mentioned leave was given to restore Thomas as plaintiff, for the use of Mann Bros., as the suit was originally commenced, which was done, and the declaration amended by adding a count in *indebitatus assumpsit.* To the declaration as thus amended defendant pleaded the general issue, and a special plea averring the identity of the causes of actions in both counts, and that it was expressly provided in the policy on which the suit was brought, that no action of any kind, either at law or in equity, for the recovery of any claim on the policy, should be maintainable unless such suit should be commenced within twelve months next after such loss or damage under the policy had occurred. The replication filed traverses the identity of the causes of action as set forth in the several counts of the declaration,

and avers the suit was commenced within twelve months next after the loss under the policy was sustained. On the first trial in the Superior Court plaintiff recovered a judgment against the company for the amount due on the policy. That judgment, on the appeal of the company, was reversed by the Appellate Court, and the cause remanded. A second trial resulted, as before, in a judgment for plaintiff, which was also reversed by the Appellate Court and the cause remanded, but afterwards, by consent of parties, the court vacated the order previously made remanding the cause, and thereupon plaintiff prayed and was allowed an appeal to this court.

It can not be known, from anything appearing in this record, for what reason the Appellate Court reversed the judgment of the Superior Court,—whether it was on the merits of the case as made by the evidence, or on account of giving instructions for plaintiff or refusing instructions asked for defendant. If it were for the latter reason, it is obvious plaintiff can not be permitted to insist in this case it was error in the Superior Court to give instructions asked on his own behalf, nor that it was error to refuse instructions asked by defendant, as that is a matter that does not affect him injuriously, but favorably. On looking into the record of the rulings of the Superior Court on questions of law, it is not seen that any of its decisions were prejudicial to plaintiff, and whether they were to defendant can make no difference, as it is not complaining, and can not complain in this court on the present appeal, no cross-errors having been assigned. The errors assigned in this court are, that the Appellate Court erred in reversing the judgment of the Superior Court and in awarding costs against plaintiff, and in not affirming the judgment of the Superior Court and awarding costs against defendant. As has been seen, defendant on this appeal is not complaining of any decision made by the Appellate Court, and it must be understood as acquiescing in that decision,

.whatever it was.    (*Fogarty* v. *Ream,* 100 Ill. 366.)    It is equally obvious the party appealing to this court can not complain of any ruling of the Appellate Court on the instructions given or refused at the trial, as they did not and could not affect his interests in the trial court.    As before remarked, the instructions of the trial court were all favorable to him.

The action of the Appellate Court in vacating the remanding order must be treated as in effect rendering a final judgment in that court against plaintiff on the merits of the case as made by the evidence, without regard to any action or ruling of the Superior Court, otherwise there could be no appeal to this court from its decision.    (*Harzfeld* v. *Converse,* 105 Ill. 534.)    If it were merely a judgment of reversal, and not a final judgment, it is plain no appeal would lie.    By the Practice act the Appellate Court, in cases of appeal or writ of error, may render final judgment and cause execution to be issued.    Unless that was done in this case no appeal would lie, and as the parties themselves have so treated the judgment of the Appellate Court, this court may also regard it as a final judgment, in the sense those terms are used in the statute.    It is clear, then, that the only question that can be considered on the present appeal is, whether the Appellate Court erred in reversing the judgment of the Superior Court, and in rendering final judgment against plaintiff upon the merits of the case as made by the evidence.

In cases of this kind no assignment of error is allowable that will call in question the finding of the inferior or Appellate Court on controverted questions of fact.    The finding of the Appellate Court upon questions of fact in such cases is therefore conclusive upon this court.    But on turning to the transcript of the record of the Appellate Court, it will be seen that court have embodied no findings of fact in their judgment or final order, and hence, according to the decision in *Coalfield Coal Co.* v. *Peck,* 98 Ill. 139, it must be understood the Appellate Court did not find the facts of the case to be

other or different than they were found by the trial court to be. In *Lake Erie and Western R. R. Co.* v. *Zoffinger,* 107 Ill. 199, it was held, where there is a conflict in the testimony as to the material facts, and the jury find the issues for plaintiff, that finding implies a finding of every fact the evidence tends to establish in favor of plaintiff, and that the affirmance of the judgment by the Appellate Court implies a finding of the facts in the same way, which latter finding is, of course, conclusive on the Supreme Court. In that case there was evidence tending to establish certain facts, and it was further held, that conceding the facts to be as they must have been found, a clear case was made,—that is, under the law,—in favor of plaintiff, where a recovery was justified. The question then recurs, was it error in the Appellate Court to render final judgment against plaintiff on the facts as they must have been found by the trial court? And that is the only question that can be considered on this appeal, as the case now comes to this court.

The logic of the opinion of the majority of the court, as I understand it, is, that because the trial court refused a proper instruction asked by defendant, that would justify the Appellate Court in rendering final judgment against plaintiff, as was done, although on the facts, as the evidence tends to establish them in his favor, he might be entitled to a judgment under the law, if properly applied,—at least this court will not consider whether on the facts, as they must have been found, the law was for plaintiff, and he should have judgment. If that is the decision of this court I most respectfully dissent from the conclusion reached—a conclusion, with all due respect to the majority of the court, it seems to me, that has but little in its support, either in reason or authority. In the first place, the action of the court in refusing the instruction complained of at the trial, is a matter over which plaintiff had no control, and it was certainly not his fault the court refused the instruction; and second, I understand the

.conclusion reached is in conflict with the decisions of this court in *Harzfeld* v. *Converse, supra, Lake Erie and Western R. R. Co.* v. *Zoffinger, supra, Schertz* v. *Indianapolis, Bloomington and Western R. R. Co.* 107 Ill. 577, and *Schrœder* v. *Trade Ins. Co.* 109 id. 157. In all of these cases, assuming the facts to be as they must have been found by the trial and Appellate courts, it was considered as a question of law whether the plaintiff was entitled to recover. In *Harzfeld* v. *Converse,* the facts as found by the Appellate Court were embodied in the final order, but it can make no difference whether they were found in that way or by a judgment of affirmance, which implies a finding of the facts the same as they were found by the trial court. In *Lake Erie and Western R. R. Co.* v. *Zoffinger,* the facts were understood to be .found by a judgment of affirmance in the Appellate Court, and it was held as a question of law that on the facts as they must have been found the plaintiff was entitled to recover. I understand the case of *Coalfield Coal Co.* v. *Peck,* 105 Ill. 529, is in entire harmony with the cases cited.

. In the light of these decisions I propose to consider .whether the facts in this case which the evidence tends to establish in favor of plaintiff, and which, it must be understood, were found in his favor by the trial and Appellate courts, show a cause of action in his favor. I am of opinion they do, and will state some of the reasons on which my opinion is based.

As respects the limitation clause of the policy, as to the time in which suit should be commenced to recover any loss or damage under the policy, and which was pleaded as a de-. fence in the trial court, I concur in the views expressed in the opinion of the majority of the court. Without discussing that question further, it is sufficient to say I concur with the court in holding it is no defence to the present action, as it was commenced in apt time. On this point in the case I understand all the members of the court agree.

It will be seen the policy provides applications for insurance must be in writing, and must specify the construction and materials of the building to be insured, or containing the property to be insured, by whom occupied, whether as a private dwelling or otherwise, and whether any manufacturing is carried on within or about it, and that such "survey and description" shall be taken and deemed to be a part and portion of the policy to be issued thereon, and a warranty on the part of the assured. Another clause of the policy declares if any person effecting insurance in the company shall make any misrepresentation or concealment touching the risk to be assumed, the policy shall be void. The application in this case discloses the fact the building insured was used for manufacturing "clothes-pins and broom-handles," and the defence most insisted on is the alleged omission of the assured to disclose the fact that a portion of the building was used, at the time the insurance was effected, for the manufacturing of shingles. As before remarked, the Appellate Court, by their judgment or final order, did not find the facts to be different from what they were found by the trial court, and as that court found the issues for plaintiff, this court must presume the jury found every fact material to the issue in favor of plaintiff, that the evidence tends to establish. It will therefore be necessary to look into the record to see what facts the evidence establishes, or tends to establish. It appears, from uncontradicted testimony, that one Taylor, an insurance agent residing at Minosha, came to plaintiff and wished to insure the property that was afterwards included in the policy; that he stated over a number of companies he had, and among others he mentioned the Fame Insurance Company of Philadelphia, defendant in this suit; that he (Taylor) examined the premises, and was familiar with all the kinds of manufacturing being done in the building; that the application for insurance was made out by Taylor on a blank of the Planters' Insurance Company, and was addressed to

the Mercantile Insurance Company of Chicago; that assured answered all the questions put to him by Taylor truthfully, so far as he knew, and noticed the answers when he signed the application; that Taylor did not ask plaintiff the question contained in the application, "Name the property," to which the answer is written, "Clothes-pin and broom-handle factory;" that he did ask, "How wide was it," (the building,) and plaintiff answered, "54x40;" that he did not ask, "What is the precise kind of goods made, and of what material;" that he did not ask any question of that sort; that Taylor was around the premises before he took the application, and knew that plaintiff was manufacturing shingles in the building; that plaintiff looked over what Taylor asked, and looked over his own answers; that he looked over the written answers briefly, but he could not say he looked at every one of them; that when Taylor had filled it up "he turned the application over to him to sign it, and he did sign it;" that at the time he signed it there was a kind of plat on the back of the application, but no diagram; that Taylor, when he took the application, represented that he was an agent of the defendant company; that plaintiff knew Taylor was in the insurance business at Minosha, and had an office there; that he received the policy from Taylor in about a week or ten days after the application was made, and paid him the premium ($50) about thirty days thereafter. It also appears that Taylor sent the application to Eastman, an insurance broker at Chicago; that Eastman gave it to the agent of defendant at Chicago; that such agent issued the policy and delivered it to Eastman, and that Eastman sent it to Taylor, who, as has been seen, delivered it to plaintiff.

Both parties disclaim the agency of Taylor in the premises. Without determining whether he should be regarded in law as the agent of defendant, it is quite certain he was not the agent of plaintiff, and plaintiff is in no way answerable for any misconduct on his part. His position was that of an

insurance solicitor, and he acted in this transaction in that capacity. It was known to the agent acting on behalf of defendant that Taylor was an insurance agent. It does not appear the agent of defendant, when he issued the policy, knew the application for it had been taken by Taylor, but he did know it came to him from Eastman, who was an insurance broker residing in Chicago. When insurance companies take applications for insurance from brokers in that business, they will not be permitted to treat such brokers as the agents of the assured, unless it clearly appears that relation existed. The better rule is, they shall be required to rely upon the integrity of such brokers, and if they practice any fraud upon the companies without the connivance of the assured, or any wrongful conduct on his part, the companies must bear the loss. All risk can be avoided by the companies refusing to take applications for insurance from any brokers except such as may be known to be entirely responsible. Any other rule would make it possible to practice great frauds on parties wishing insurance. Applying this reasonable rule to the facts of this case, if Taylor did anything that was wrong in taking the application upon which the policy was issued, his misconduct should not be imputed to plaintiff as wrongful conduct on his part.

It is said the diagram on the back of the application for insurance was not accurate, and that defendant's agent was deceived by it. That may be true, but whose fault was it? It does not appear it was the fault of plaintiff, for he testified there was no diagram attached to it when he signed the application, and the jury must have so found, as no witness contradicts him in that respect. Nor does it appear who made the diagram; but as it was not made by or authorized by plaintiff, it is immaterial, so far as this case is concerned, who made it.

But a more material inquiry is, whether plaintiff is responsible for the omission to state in the application that shingles

were also manufactured in the building to be insured. The application does show that "clothes-pins and broom-handles" were manufactured in the building. This answer was written by Taylor himself, without any question having been put to plaintiff on that subject. But the answer as written was true, and there was no breach of the warranty implied in every application for insurance in that respect. So far as plaintiff answered questions propounded to him by Taylor, it does not appear that he misrepresented anything, or made any false statements. Was he guilty of any concealment touching the risk to be assumed? The only complaint in this regard is the omission to state that shingles were also manufactured in the building about to be insured. The assured was not asked to make any statement in that regard, and gave none. It was known to Taylor, who solicited the risk, that shingles were manufactured in the building, and plaintiff may have supposed it was not necessary to state that which was fully known to the party acting. There is not a single fact established by the evidence that tends to show the assured did not act in the utmost good faith in making the application on which the policy was issued. The rule of law is, that when the assured makes a full and fair disclosure of all the facts that would materially affect the risk, so far as the company wish to interrogate him, and the agent, on behalf of the company, writes false answers to the questions propounded, without the knowledge of assured, and assured in good faith signs the application, he will not be responsible for any wrongful conduct of the agent. As before remarked, the broker taking the application in this case was in no sense the agent of the assured, and he was in no way responsible for any wrongful conduct of which he may have been guilty, if he was guilty of any. Here the company relied on the work done by the broker, and adopted it as the basis of the insurance contract. In such cases there is much more reason for holding the broker was the agent of

the company than of the assured, and if either party is to
suffer from his misconduct, it should be the company that
adopted his work. As has been seen, it appeared on the face
of the application that "clothes-pins and broom-handles"
were manufactured in the building on which the risk was to
be taken. It will be noticed the application contained a
question following the one under which was written, "Clothes-
pins and broom-handles," "Is there any other business carried
on in the building or buildings?" That question was not
propounded to assured, and was not answered at all. It
does not appear assured knew the application contained any
such question. The agent of defendant says he read the ap-
plication very carefully and thoroughly, and if so he must
have known before he issued the policy that question was
not answered. Below the signature of applicant there was a
printed note, as follows: "Every question must be answered,
or the application will be returned." Had the agent to whom
the application was delivered observed the direction there
given, it would have been his duty to return the application
to applicant, that he might have an opportunity to answer
the question, if it had been inadvertently overlooked. This
would have been nothing more than fair dealing with appli-
cant. The provision as to the unanswered question at the
bottom of the application distinctly notified the company if
they did not wish to issue the policy without that question
being answered, the application should be returned to the
applicant. Omitting to return the application was equiva-
lent to an express waiver of an answer to that question.
Had it been returned, and the attention of the applicant
called to it, no doubt his answer would have disclosed the
fact shingles were also manufactured in the building. So
far as the application disclosed the kind of goods manufac-
tured in the building it was entirely accurate, and if the
company desired fuller information, it should have returned
the application for an answer to the question not answered,

which would have given the necessary information. It may well be concluded the company was willing to take the risk without that question being answered. If so, it was their privilege, and if loss ensued on that account, it should be attributed to their want of due care in that regard. A mere omission to answer a question is not a warranty that anything remains to be answered, and so in case of a partial answer it has been held the warranty can not be extended past the answer. Cases sustaining this view of the law are *Delleber* v. *Home Life Ins. Co.* 69 N. Y. 256; *Liberty* v. *Hall Ins. Co.* 7 Gray, 261.

Assuming, as must be done, the jury found all the facts in favor of plaintiff the evidence tends to establish, I am of opinion the law is for plaintiff, and that the final judgment against him in the Appellate Court is erroneous, and should be reversed.