## Louis McCall and Daniel Abbott, Executors,
v.
## Henry R. Lee.

*Administration—Filing of Claim within Time Limited—Continuance—Re-instatement—Amendment—Allowance of Claim by Circuit Court—Classification—Personal Property—Life Estate, with Limitation Over.*

1. Where a claim against an estate is filed in the Circuit Court in time and is continued by agreement until the final determination of another case, the clerk in the meantime omitting it from the docket, the court does not lose its jurisdiction and may re-instate the claim on proper motion and notice, although such motion is not made immediately after such other case is determined.

2. Where such a claim has been filed by an administrator within the time limited by statute, the court may subsequently allow the substitution, by way of amendment, of the party interested, in place of the administrator, as claimant, the real claimant and the basis of the claim remaining the same.

3. In allowing a claim against an estate the Circuit Court may leave the classification thereof to the County Court, which directly supervises the administration.

4. This court declines to interfere with the findings and judgment of the court below, allowing a claim against an estate for the value of certain personal property turned over to the deceased under a special agreement creating a life estate with limitation over in remainder.

[Opinion filed December 3, 1886.]

APPEAL from the Circuit Court of Fulton County; the Hon. JOHN C. BAGBY, Judge, presiding.

Messrs. GRAY & WAGGONER and DANIEL ABBOTT, for appellants.

McCall v. Lee.

Messrs. McKENZIE & CALKINS, for appellee.

PLEASANTS, P. J.   This was a claim filed in the County Court and taken by appeal to the Circuit Court, where the claimant obtained a judgment against the executors generally, for $7,739.60, to be paid in due course of administration.

It was originally filed in the name of Thomas McKee, as administrator of the estate of Kate H. Lee, for the value of certain promissory notes and other property, real and personal, therein mentioned, amounting in all, exclusive of interest claimed, to $7,659.

Kate H. Lee, who was the wife of appellee and daughter of Catharine Dwire, died in Knox County, December 21, 1876, intestate, without descendant, and leaving an estate of the value of twelve to fifteen thousand dollars, mostly in promissory notes and wholly in personal property, except eighty acres of land in Iowa, and her husband paid her debts.

On the 8th of January, 1877, he and Mrs. Dwire entered into the following agreement:

"Article of agreement between Henry R. Lee, of Galesburg, and Mrs. Catharine Dwire of Canton:   It is agreed and fully understood between ourselves, viz.:   Mrs. Catharine Dwire and Henry R. Lee, that the property, both real and personal, belonging to Mrs. K. R. Lee, deceased, in her own right, shall be equally divided between Mrs. Catharine Dwire, her mother, and Henry R. Lee, her husband, said division to take place after all her debts are fully paid, including funeral expenses.   And it is further agreed, that in case Mrs. Catharine Dwire should die first, her one-half interest shall go to Henry R. Lee; and if Henry R. Lee should die first, then his one-half interest shall go to Mrs. Catharine Dwire.   We hereunto set our hands this eighth day of January, 1877.

" HENRY R. LEE.

" CATHARINE DWIRE."

About the middle of February following, they made the division, she taking for her half the land referred to, being the S. $\frac{1}{2}$ N. E. $\frac{1}{4}$ Sec. 21, T. 74, R. 35, in Cass County, Iowa, with the notes and other personal property mentioned

McCall v. Lee.

in the claim, filed herein as above stated. He indorsed the notes and executed to her a quit-claim deed of the land for the expressed consideration of $1,600.

Mrs. Dwire died at her home in Fulton County, April 24, 1879, leaving a will by which she gave all her estate to a sister, a niece and two nephews, and appointed appellants her executors, to whom letters testamentary were issued May 10, 1879.

On March 15, 1880, upon petition of appellee, administration of his wife's estate was granted in Knox County to Thomas McKee. He, after demand of appellants for the property received by their testatrix on the division mentioned, or its proceeds, caused a citation to be issued against them by the County Court of Knox County, under Sec. 81, Ch. 3 of the R. S., and on the hearing obtained an order for the delivery thereof, from which they appealed. Afterward, on April 11, 1881, he filed in the County Court of Fulton County the claim here under consideration. Thereupon it was agreed by the parties that the case should be continued until the final disposition of the one pending in Knox County. That went up by successive appeals, through the Appellate Court, where it was decided in February, 1882, (Abbot v. The People, 10 Ill. App. 62,) to the Supreme Court, which disposed of it finally at the March term, 1883 (105 Ill. 588).

The decision was against the administrator. It was held that in this case the husband was entitled under the statute to the whole of his wife's personal estate; that if the administrator got it he would only hold as trustee for him, and that as he had got it directly, without the aid of the administrator, and voluntarily transferred it to Mrs. Dwire, the administrator could have no more right, as against her, than as against him. How he disposed of it, or with what effect, did not concern the administrator. The court recognized the fact that the proceeding was instigated by the husband and for his own sole benefit; that he procured the appointment of McKee for this sole purpose, but held that his actual possession of the property and transfer to Mrs. Dwire cut off all right of the administrator, and that if he was entitled to it again upon her death by virtue of the agreement with her (which the court

expressly declined to decide either way, as that question was not before it), he must assert it in his own name.

Corrected and enlightened by this decision, appellee caused the active prosecution of the claim in the Fulton County Court to be resumed, and obtained leave to amend it in form by substituting his own name as claimant for that of the administrator. This resumption took place at the August term, 1883, when two or more terms had elapsed after the final decision of the Knox County case, and was pursued to the judgment from which the present appeal was taken.

Appellants say that the agreement for continuance ended when that decision was made, at March term, 1883, and that the Fulton County Court had no power, so late as its August term following, to re-instate and try the case.

Just when the decision of the Supreme Court was made, or the fact came to the knowledge of appellee or his attorney, does not appear, but assuming it was as early as April, or even March, which is not probable, we think there was no such delay as would work a discontinuance or oust the court of jurisdiction of the cause. The claim was filed within two years of issuance of letters testamentary, and notice thereof duly given to appellants. All the parties had been in court and agreed to a continuance for a time that was uncertain, but reasonably sure to be extended over many terms, which entitled appellants to a new notice before the case should be again called up for action. This was given, and the fact that it was not re-docketed at the next term after the decision of the Supreme Court and thereafter regularly continued from term to term by formal order at the instance of the claimant, did not prejudice them. The case was in court and not disposed of. It was competent for appellants to call it up upon notice at any time after said decision, and ask to have it dismissed for want of prosecution, but no such step was taken. The court therefore rightly took action when it did, on the motion of appellee. Barbaro v. Thurman, adm'r, etc., 49 Ill. 283.

It is also urged that if any judgment could have been lawfully rendered for plaintiff, it should have classified the claim, because the statute requires the County Court to classify

McCall v. Lee.

claims as they are allowed, and the Circuit Court, on appeal, can render no other judgment than such as the County Court might have rendered. This particular duty is required by the County Court because it directly supervises the administration. The judgment of the Circuit Court allowing the claim and ordering it to be paid in due course of administration, does not deprive the County Court of this supervision. So far, therefor, as it takes the place of the judgment of the County Court, it is the same in form and effect as would have been that of the County Court if it had allowed the claim. The statute still devolves upon that court the duty of supervising the administration, and it will classify the claim as a general judgment of the Circuit Court should be classified.

Lastly, it is contended that the judgment is erroneous, in that it does not order the amount to be paid out of subsequently discovered assets. This is based upon the assumption that the substitution of appellee as claimant was the commencement of the suit as to him, and being made September 18, 1883, was more than two years after the letters testamentary issued to appellant, which presents the main question in the case. There is no room for a doubt that this substitution was asked and allowed as an amendment to the form of an existing suit, and not as the commencement of a new one. By it no new defendant was brought in, no addition made to the items originally charged, nor any change in any of those so charged. The ground of claim, the cause of action, remained exactly as first stated; namely, the appropriation by Mrs. Dwire absolutely to her own use of certain items of property specified and alleged to have belonged to the estate of Mrs. Lee. The object of the suit was not to recover these articles *in specie*, but the value of them in money. It was assumed that the articles themselves not being produced on demand made, had been disposed of by Mrs. Dwire, and could not be so recovered. The account is in form: "To amount of note" (of third party named), "To interest thereon," "To eighty acres of land," "To piano," etc., just as accounts of indebtedness for property usually are, as if it had been sold to her or treated by the claimant as so sold.

Nor did the amendment change the real claimant. Both the Appellate and Supreme Courts found that fact, and appellants so understood it from the beginning.

It relieved the claimant of none of the burden of proof resting upon the original party, but rather added to it, imposed no new or greater burden upon the defendants, nor cut off any defense they might otherwise have made. Had the suit proceeded in the name of the administrator, as it would if there had been any debts for him to pay or distribution to make, he would have rested upon proof of decedent's possession at the time of her death, of Mrs. Dwire's afterward, and of the value of the property. Under the amended form appellee was required to prove the same facts, and in addition thereto his own sole heirship, the payment of all debts of the estate, and the agreement and division above mentioned. Appellants must have proved the same facts for defense in either case, namely, a valid offset against the estate of Mrs. Lee, or a valid and still operative transfer from the sole heir claiming under her. They could not successfully traverse the *prima facie* case of either claimant, nor avoid it except by proof of one of these facts, and either of them would have been alike available against either claimant.

Thus the object of the suit and the real claimant remained unchanged, and yet the amendment was necessary "to enable the plaintiff to sustain the action for the claim for which it was intended to be brought," in which case the amendment is expressly authorized by Sec. 23 of the Practice Act. Many cases illustrating the application of this provision, and the liberality with which it is construed, are cited in the brief for appellee, but we transcribe only those of Thomas v. Fame Ins. Co., 108 Ill. 91, 100, and United States Ins. Co. v. Ludwig, 108 Ill. 514.

The remaining points urged by appellants relate to the facts and the weight of evidence. These were for the court, acting as a jury, to determine. We discover nothing in the record, or wanting to it, to authorize a reversal of the findings.

*Judgment affirmed.*