UNION NATIONAL BANK OF CHICAGO

v.

MANISTEE LUMBER COMPANY ET AL.

*Contracts — Construction of — Tender—When Waived— Practice—Reversal without Remanding.*

1.  One party to a contract loses no rights by failing to make a tender contemplated by the contract, where the other party was not ready to perform on his part.

2.  When a jury trial is, under the statute, waived, and the case tried by the court, this court may, on review, do what, in its judgment, the lower court ought to have done, and enter judgment accordingly.

3.  The correct practice requires the facts to be recited on the record here only when a judgment based upon the facts is reversed without remanding, or with final judgment on the cause of action; but when this court reverses that of the lower court for error in law, and refrains from remanding, the reason why it refrains from an act discretionary need not appear.

[Opinion filed January 14, 1892.]

APPEAL from the Superior Court of Cook County; the Hon. ELLIOTT ANTHONY, Judge, presiding.

Messrs. TENNEY, CHURCH & COFFEEN, for appellants.

Messrs. TATHAM & WEBSTER and DOVEL & SMITH, for appellees.

GARY, J.   This is an action of assumpsit to recover dividends which the appellants claim under an agreement, as follows:

"This agreement, made this 7th day of March, A. D. 1889, between the Union National Bank of Chicago, as party of the first part, the Manistee Lumber Company, and the State Lumber Company of Michigan, as parties of the second part, and William Wente and R. R. Blacker, as parties of the third part, witnesseth:

Whereas the parties of the third part, in connection with other parties and corporations, are engaged in forming a syndicate for purchasing the property and assets of the Manistee Salt & Lumber Company, of Manistee, Michigan (insolvent), and forming a corporation to receive the title thereto, said corporation to be capitalized at an amount not exceeding the actual cost to said syndicate of said property and assets, and for the purpose above stated, the said third parties are desirous of acquiring the claims against said Manistee Salt & Lumber Company now owned by the party of the first part, amounting at the par value thereof to the sum of $39,000.

Now, in consideration of the premises and the sum of eleven thousand seven hundred dollars ($11,700) to it in hand paid by the parties of the third part, the receipt whereof is hereby acknowledged, the party of the first part hereby agrees to forthwith assign and transfer its said claims to the said Manistee Lumber Company, one of the parties of the second part hereto, reserving, however, all benefit of any and all collaterals, indorsements or other securities held by the party of the first part in connection with said claim; provided, however, that this agreement is upon the express consideration and condition that the parties of the second and third parts hereto shall proceed without delay to purchase the said property and assets of the said Manistee Salt & Lumber Company, and to form the said corporation with a paid-up capital as above stated, and transfer to said company the title to said property and assets, or cause the same to be done; and said bank shall be entitled to receive, upon the organization of said company and upon a tender to either the second or third parties of said sum of $11,700 cash, on or before the first day of May, 1889, the fully paid capital stock of said company to the extent and in the ratio that said $11,700 shall bear to the aggregate cost of said property and assets to said syndicate; but said amount of stock so to be received by said first party shall in no event be less at its par value than $11,700.

The parties of the second and third parts severally further agree that the said stock, so to be received by said bank at its election, shall be given a representative on the board of

directors of the said new corporation to be designated by the first party hereto.

Should said parties of the second and third parts fail to acquire said property and assets, they hereby further agree to pay to said party of the first part the share of any dividends to which the claims hereby agreed to be transferred and assigned shall be entitled, *pro rata.*

Witness the hands and seals of said parties the day and year first above written.

<div style="margin-left:3em">

Union National Bank of Chicago,

By J. J. P. Odell, V. P.        [Seal.]

Manistee Lumber Company,

Wm. Wente, Secretary.        [Seal.]

William Wente,        [Seal.]

State Lumber Co.,·

R. R. Blacker, Sec'y.        [Seal.]

R. R. Blacker."        [Seal.]

</div>

The appellees are the parties, other than the appellant, to that agreement.

They purchased on the 18th of June, 1889, the bulk of, but never did purchase all, the property and assets of the Manistee Salt & Lumber Company, about $25,000 thereof being sold to other parties; and the new company was not organized until February, 1890, and then about $190,000 of the property and assets that they did purchase did not go to the new company, but were otherwise disposed of. No tender was made by the bank, at any time, of any money in pursuance of the clause relating to a tender on or before the first day of May, 1889, and the appellees have treated, and do treat, the omission of such tender as a neglect by the appellant to perform a condition precedent, by which neglect the appellant has lost all right to the dividends.

In our view of the case, it is quite unnecessary to set out the voluminous evidence, shown by the record, as to what took place between the parties when the contract was made, and subsequent correspondence. The agreement provides that it "is upon the express consideration and condition that the parties of the second and third parts hereto shall proceed without

delay to purchase the said property and assets of the said Manistee Salt & Lumber Company, and to form the said corporation with a paid-up capital as above stated, and transfer to said company the title to said property and assets, or cause the same to be done," and should they " fail to acquire said property and assets, they hereby further agree to pay to said party of the first part the share of the dividends," etc.    This last sentence is elliptical; the words, " or form the said corporation," or some equivalent words, being understood as following the word " assets."

The proper construction of the agreement is that all parties contemplated that the new corporation would be formed, and certificates of shares, or some other evidence of title thereto, be ready for the bank to receive as early as May 1, 1889.    The clause " and said bank shall be entitled to receive upon the organization of said company, and upon a tender to either the second or third parties of said sum of $11,700 cash, on or before the first day of May, 1889, the fully paid capital stock of said company, to the extent and in the ratio that said $11,700 shall bear to the aggregate cost of said property and assets to said syndicate," provides for simultaneous acts—the tender, and consequent payment of the money for the stock that the bank was then to receive for the money.    We need not inquire what would have been the result if, after the 1st of May, 1889, the appellees had done all that the agreement required of them, and the bank had then refused to take any stock, or had applied for stock and been refused; the appellees have consistently and persistently refused to acknowledge any further claim of the bank under the agreement, because, as they insist, no tender was made in time.    In reply to a letter of June 28, 1889, from the bank, inquiring " when the stock will be ready for delivery, and when we can pay," they say, very politely, under date of July 1, 1889, " Will you please inform us if any time on or before the 1st of May, you tendered or paid us $11,700, as required in the contract under which you claim the stock.    If you did, we have no knowledge of it, and if you did not, we believe you have no further business with us on the Manistee Salt & Lumber Company matter."

The contingency upon which, under the last clause of the agreement, the bank was entitled to dividends, has happened; the bank has lost no right by not making a tender before the appellees were ready to perform on their part; and the appellant should have had judgment for the dividends with interest. It is old law that "if judgment be given against the plaintiff, and he bring a writ of error, the judgment shall not only be reversed (if there be error is understood), but the court shall also give such judgment as the court below should have given." Bacon, Ab., title "Error."

When all trials of fact were by a jury, this principle could be applied, when the question was what judgment should be given on the facts, only where the jury had found them by a special verdict; though Pearsons v. Bailey, 1 Scam. 507, is to the contrary; but when, as in this case, a jury trial is, under the statute, waived, and the case tried by the court, this court on review may do what, in its judgment, the lower court ought to have done, and thus apply to new conditions the principle of the old law. Prince v. Lamb, Breese, 378.

It was under such conditions that the Supreme Court justified this court in rendering final judgment for the plaintiff, on the facts, in Com. Ins. Co. v. Scammon, 123 Ill. 601; Scammon v. Com. Ins. Co., 20 Ill. App. 500. In fact, though the reports do not show it, the remanding order shown by the report of the case here was stricken out, and the facts found and final judgment entered here, at the request of both parties, that the case might be taken to the Supreme Court without delay. The power of the court to find the facts, and render judgment upon them contrary to that of the court below, was not here discussed. While a finding here of the facts, after a jury trial, contrary to the verdict, may, under Sec. 87 of the Practice Act of 1872, be made the "final determination of " the cause, in case the judgment below is simply reversed without remanding, yet such judgment is no bar to another action. 2 Phillipps on Ev. (C. & H.) 18 star page; Herman Estop., Sec. 105; Freeman Judg., Sec. 481; 2 Black. Judgt., Sec. 683; see, especially, Close v. Stuart, 4 Wend. 95.

Without infringing upon the constitutional right of trial by

jury, such finding can only be considered as the justification by the court, to itself, for not remanding the cause. If the only error arises on the facts, the section cited requires, if the cause is not remanded, that the facts as found be recited in the record; but if the reversal be for error of law, that section does not touch it, and the old and universal rule was that remanding was discretionary. Fries v. Penn R. R., 98 Pa. St. 142. No stat. ute requires it. It is but another name for a *venire de novo*, the power to direct which, on a judgment of reversal, was originally a very grave question. The cases are collected in brief of counsel in Sterret v. Bull, 1 Binney, 138; Bacon Ab., " Error," M. 2. In this State, it seems to have been assumed without question. Smith v. Bridges, Breese, 18. If the suit can not be prosecuted it will not be remanded. Ditch v. Edwards, 1 Scam. 127. Or if it would be an injury, and not a benefit, to the party asking it. Brown v. Clark, 3 John. (N. Y.) 443.

The right practice would seem to require facts to be recited on the record here only when the judgment of this court is based upon the facts ; either in reversing without remanding or with final judgment on the cause of action; but when the judgment of this court reverses that of the lower court for error in law, and this court refrains from remanding, the reason why it refrains from an act discretionary need not appear. Thomas v. Fame Ins. Co., 108 Ill. 91.

The judgment below will be reversed and judgment will be entered here for the appellant for the amount of the dividends and interest.

*Judgment reversed.*